Good morning, ladies and gentlemen. Our first case for this morning is State of Wisconsin v. Ho-Chunk Nation. Mr. Piper. Thank you, Your Honor. Tom Piper, representing the Ho-Chunk Nation, and may it please the Court. Could you just speak up, Mr. Piper? I'm sorry, Your Honor. Thanks. Gaming in general, and poker in particular, is played prevalently throughout the state of Wisconsin. The state has its lottery, and despite the only explicit prohibition against poker in Wisconsin in the Constitution, which says the state may not offer either poker or simulated poker as part of the lottery, it has offered several varieties of simulated poker as part of the state lottery. Charities play poker. They are expressly authorized to play poker as part of the raffle in Wisconsin. Video poker is played with impunity in Class B taverns. Private poker games are played, again, with impunity. And yet the district court said that poker, non-bank poker, cannot be played on the sovereign land of my client's territory because it is not permitted and is expressly not authorized and prohibited in the state of Wisconsin. We believe that ruling to be erroneous, as a matter of fact, in law, and I'm asking you today to reverse it. What does it mean to say that something is not explicitly prohibited? Your Honor, in our opinion, first of all, the Constitution, and that's where the genesis from Judge Crabb's decision came about prohibition, was that it was prohibited, and yet there isn't any language after the 1993 amendment to the Constitution that says that it is prohibited. It only says explicitly prohibited with poker, and we believe that after cabazon, the word prohibited has to be considered in the context at the time. So is it your argument that the word prohibited is somehow ambiguous? It is my argument that post-cabazon, it is ambiguous. So you need to decide pursuant to cabazon, you're saying, whether it's prohibited in the regulatory sense of that term, or whether it's prohibited in the criminal law sense of that term? I am saying that, Your Honor. I'm saying that cabazon started with two games, poker and bingo, both of which were indisputably prohibited, one under the Riverside County Ordinance, which was poker, and the other under state law, which was bingo. They were prohibited, and the United States Supreme Court said, but if the public policy of the state, there, California, was such that gaming was allowed, and in fact to the benefit of California, just like Wisconsin, then it is regulated. It is not expressly prohibited. Now, of course, the state argues that the cabazon case itself is pre-IGRA, so does the fact that the Indian Gaming Regulatory Act happens after cabazon make any difference here? It makes a significant difference, and it's contrary to what the state said. There is really no dispute that IGRA came as a result of the cabazon case. Right. And cabazon is not just mentioned several places in the Senate bill, which I'll talk about in a minute, but it's part of IGRA. If you look at 27015, as part of the legislative findings, it says that one of the legislative findings underlying IGRA is that the tribe has exclusive authority to regulate gaming on its land unless the criminal laws of the state and the state public policy together prohibit it. That's cabazon. That's part of IGRA. So you see that. I mean, actually, your brief spent a lot of time talking about legislative history, but it sounds to me like you're now saying that actually the text of the statute itself provides some support for your position. I am saying it provides support for the position, but I'm not ignoring the legislative history. Right. I mean, obviously legislative history is something of a third rail for some people, maybe not necessarily me, but it's something that needs to be used with caution. And certainly if a statute says something contrary to what was in the legislative history, we need to go with the language of the statute. I agree with that, Your Honor. In Judge Easterbrook's decision in race and Clare, and you may tell me I'm wrong, but the way I read his decision is that legislative intent is really irrelevant because the legislature could have blown it. They may not have done what they intended. But legislative meaning is very significant because it tells what the words meant at the time. And if at that time words are terms of art and the legislative history will show that to be the case, then legislative history is extremely important. And Judge Crabb said legislative history you don't go to if there's a plain meaning because Treen that was 12 years prior to in race and Clare had been essentially implicitly overruled. We think that is inaccurate that in race and Clare says exactly the opposite. But there is support within IGRA itself before we get to legislative history, and that is let's look at the first words if it is authorized under state law, which is the first component under 2703 sub 7 for unbanked card games, non-banked card games. So you're not making any argument about banked poker. You're saying that this is all just the non-banked version. It is non-banked. And class 2 carved out the cabazon issues. Bingo and poker are really the only two components of class 2, and they were carved out for special treatment. And it says if they were permitted. And remember, part of the whole analysis is not just 27037, but also 2310D, which says that if it's located in state that permits gaming for any person, entity, or organization and for any purpose. That's part of the whole analysis for the class 2 non-banked poker. But there's an issue there dealing with the compact. I mean, there are some forms of gambling that are, in fact, permitted in Wisconsin, but solely because they're class 3 and there is a compact between the state and the nations or the tribes, whatever they may be. True. So are you leveraging from that to say anything that's permitted in the compact can be done? Oh, absolutely not, Your Honor. So how do you draw that line? The compact has nothing to do with this. The compact does not define whether something is class 2 or class 3. Only IGRA can do that. It has exclusive jurisdiction. IGRA defines what is class 2. So doesn't this compact cover a few class 2 games? I thought this compact had a provision in it about poker. It does have a provision in it about poker. At the time, poker was not part of the number of games that could be played at class 3 facilities. The governor under 14.035 has the discretion under the law to give more poker. And this is after the 1993 amendment. Is this banked poker or all poker? It's banked poker but all forms of poker. All it says is what kinds of games can be played at class 3 facilities. At that time, poker was not being played. It was added on as to be played. Both unbanked and non-banked. That doesn't turn non-bank into a class 3. All it's saying is what can you offer at class 3 facilities. So our position is compact has nothing to do with this case because compacts have nothing to do with class 2 facilities. But what is permitted under IGRA for class 2 facilities? Permitted under the Artichoke Joe case out of the 9th Circuit says authorized or permitted can be done by acquiescence by not preventing it. Well, that's certainly happening in Wisconsin. Video poker is being played with impunity. Poker itself is being played. That's kind of tough for me to buy in that there is at least this fine for up to five machines, forfeiture, whatever you want to call it. That doesn't seem to be an endorsement of that activity, and it could be assessed day after day after day. It's not like a license that the bar owner obtains. It is a regulatory provision rather than a criminal provision. Are they decriminalized? Is that true this is a civil penalty? Yes. And the tavern owner does not lose his license? The tavern owner does not lose his license, and they can still confiscate those machines even though it's less than five. The indisputable facts that we gave to the court shows they are not doing that. They're going into those facilities, seeing those machines, and they are not confiscating those machines. Now, you could say that's because they don't have the resources, but are they permitting it by such kind of conduct? Under the Artichoke Joe case, they certainly are. But let's look at express. It makes it sound as though you want the statute interpreted on how a court views the severity of the state action, whether the court sees it as being vigorous enough. Well, I think that is part of the analysis. If you buy into the Artichoke Joe analysis, in fact, Judge Crabb said the same thing in Lac du Flambeau, though she didn't apply that here. She said it was irrelevant. But, you know, I have a lot of problems with that aspect of your argument. It seems to me a court is capable of looking at a law, as the Cabazon court did, and seeing if it's criminal or regulatory. A court is capable of looking at a law and seeing if it's civil or criminal. When you ask the court to get into the business of how aggressively a law is being enforced and whether you put 25 revenue agents on it or you put two or you don't pay any attention to it at all or whatever, I think that's a very dangerous road to go. It's not up to the court. That's an executive function, basically. There are almost separation of powers problems with that approach. Well, and I agree with that to a certain extent, Your Honor, but when it is as extreme as it is in the Wisconsin case, where it's very apparent that poker is being played and in the long run they are virtually doing nothing about it, does that not tip the scale? Is it not at the margins that the court can draw that? But is it important to your argument? I suppose we don't like that argument. All right. Here's my permit argument then, and that is that in 1993, the Constitution was amended to say the legislature can no longer permit, can no longer authorize. But what was already going on? Charities under the express provision of the raffle were allowed to provide poker, and they were doing it pre and they were doing it and are doing it post. Is that not permitting under state law? They're allowed to do it. Now, the argument on the other side is, well, they're really not betting. That's really not poker. Well, it is poker. It's non-bank poker. The charities are raising substantial amounts of money and the winners are getting a nice return on playing that game. I see this as your pick-and-choose argument, that the state can't say, well, we're allowing poker here, here, and here, but we're not allowing poker there, there, and there. And the Supreme Court has said you can't do that. I mean, if the state policy is to permit some of it, then it's permitted. In the Siquon case, certainly, Judge, can be said that. Interestingly, just a few months later, the same Ninth Circuit took issue with that in Rumsey, but only with regard to Class III. And what he said was when you're in Class II, the state cannot, game by game, in minute degrees, turn on and off its public policy. And the Ninth Circuit, three months later, in Rumsey, said, well, that is true, but that's only with regard to Class II. And what, in fact, they said was the Senate report repeatedly links the cabazon to Class II gaming while remaining silent as to Class III, a fact that itself suggests that Class II and Class III provision should be treated differently, meaning there's more flexibility with Class II. When you look at the cabazon test, or you look at the word prohibited, and it's our view that that is, in fact, has to be taken into context. And from that context and 27015, which is the cabazon test, then it becomes, at the very least, ambiguous. And you look at the Senate report, and the Senate report leaves no doubt this bifurcation of the any person for any purpose part of 2710B, which the district court said should be bifurcated. From the definitional section, the Senate report says that the intent is that the provisions of 27037 are not intended to be additional requirements on 2710B, and that is cabazon. If any person in the state is allowed to do it for any purpose, then the state cannot prevent it being done on sovereign property, and at the very least, charities are doing it all over the state of Wisconsin, and the state is doing it as part of its lottery. That means it's Class II, and it should be allowed by my client on my client's sovereign property. Thank you, Your Honor. Thank you, Mr. Piper. Mr. Koski. May it please the court. Good morning. Good morning. Assistant Attorney General Clay Koski appearing on behalf of the state of Wisconsin, and I have three points. First, this court should affirm the district court's judgment. Second, it should do so because the electronic form of poker that the nation offered at its Madison, Wisconsin casino is a Class III game under the Indian Gaming Regulatory Act. Why is it a Class III game? I mean, ICRA requires us first to figure out what's Class I. We all agree this isn't that. And then what's Class II, which includes non-banked games allowed under state law with this specific definition of what allow means. And then Class III is other. So you have to figure out Class I and Class II first. And for us, Class II. And I don't see why non-banked poker isn't a Class II game. The reason is that it is explicitly prohibited by Wisconsin law. Well, see, I know that's your argument, but maybe I'm just crazy. But when I think of the word explicit, what I think of is something that says, and non-banked poker may not be played in Wisconsin. And it doesn't say that anywhere in the Wisconsin Constitution. And we don't have a nice, clean provision, such as maybe the Utah situation. You know, if Wisconsin was just a state that said, there shall be no gambling of any kind whatsoever in the state of Wisconsin, period, full stop. Okay, I mean, that sounds clear enough. But Wisconsin has chosen a much more nuanced approach where some things are, you know, scratch-off poker is fine. Lotteries are fine. Paramutual betting is fine. All sorts of things are fine. And you're finding somehow explicit something that looks to me at best implicit. I think that our argument with regard to explicit is that it doesn't mean the same thing as specifically. Why? Because in this case, we have – Well, first of all, explicit in this case, betting is explicitly prohibited in Wisconsin law. And as we point out in our brief, WISSTAT 945.02 subsection 1 makes a bet a crime. So gambling and poker by definition involves betting. Isn't a lottery ticket a bet? A lottery ticket is actually exempted, specifically exemption from the definition of what is a bet in Chapter 945. And that's when you get into the problems, as I see it, under both the Supreme Court's line of cases and the cases in other circuits that actually do spend quite a bit of time with Indian law. If you wind up with a state whose public policy permits A and permits B and permits C, all in the form of perhaps exemptions from a general prohibition, you wind up with a state under Cabazon whose policy is regulatory, not criminal prohibitory. I know Wisconsin is a public law 280 state, but so is California. I think the way I'd like to address that is that we don't – the state's position here is that we don't get to Cabazon. We would look specifically at the statute. But I don't see how you can avoid Cabazon, actually, because you have legislative findings. You have the concept of prohibited, which the Supreme Court addresses directly in Cabazon. What does it mean to say something's prohibited? California made a big push in that case for saying, we prohibit bingo. And, you know, they did in some ways prohibit bingo. But the court says, well, you didn't prohibit it in the way that qualifies for the federal, state, you know, Indian jurisdictional allocation. I think it's very important to observe how the nation would like this court to get to Cabazon. They look to Section 2710 sub B1, and they don't quote that in their brief. And it's very telling because that section actually says, an Indian tribe may engage in or license and regulate Class II gaming on Indian lands. And then the next section, capital letter sub A, is what they say is incorporating Cabazon. So to even get to incorporating Cabazon, you must first conclude that this is a Class II game, based on the language of the statute. I absolutely agree with that. From a methodological point of view, I think we need to look at IGRA, and we need to see if non-banked poker is Class II. Whether it's prohibited or permitted is sort of a next question. And it seems to me IGRA itself defines non-banked card games, such as non-banked poker, as Class II games. Now, if that's the case, then we have to see, well, what's public policy of the state of Wisconsin vis-a-vis this kind of non-banked game? Not the kind of game where, you know, money's going to the house and you have various sorts of organized crime concerns or whatever other concerns one might have with respect to that. But I feel like you're saying we prohibit it, therefore it's Class III, and I don't see that. The state's position is definitely that the state explicitly prohibits this type of both gambling and poker, and there are two ways. And you have to convince me, you know, here's the language of the statute. Explicitly authorized by the laws of the state, clearly not. I get that. Or not explicitly prohibited by the laws of the state and are played at any location, blah, blah, blah. And I think your whole argument hinges on explicit meaning implicit. Well, as I was saying, there are two parts to the argument about explicitly prohibited. The first is the Constitution, as you point out, and that would be that the legislature is not authorized to offer gambling in any form subject to these exceptions. In those exceptions, it talks about how as part of a lottery we cannot have poker. But what about all the poker lotteries you have? You made the argument in your brief that somehow these scratch-off poker lotteries weren't really poker, and I thought that was crazy, actually. I envisioned a bunch of people sitting around the table with their Texas Hold'em lottery tickets and somebody saying, you know, I bet $20 that yours is going to be a straight or something. You could easily non-bank bet on that. And actually, that is not how those scratch-offs work. You don't even need to scratch off the game to tell if you're a winner. You only need to scratch off the edges of it, and it has a little number on it that you would scan in a machine. And you don't think you could bet on that? Well, the point is that it's not poker. Well, but it is poker, though. It's structured as poker. The state's argument is that it is not poker because it doesn't involve elements of betting, playing against other players, you're playing by yourself, scratching off a ticket. Again, you don't even have to scratch off the portion of the ticket that says which cards you received to know if you're a winner. You simply scratch off the edges, and at the bottom it has three numbers. You take that to a supermarket, for example, where they have a machine where you would hand them that ticket. They scan it, and then they punch in those three numbers, and it tells you if the card is a winner. So you don't even have to play. And you think that this is the way Wisconsin has structured this game? It's a Texas Hold'em game, you know, ticket. It's no more Texas, as we point out in our brief. If you handed someone a football-themed ticket, they wouldn't say that they're playing football. Well, but they might be making a football pool bet on it. I guess there aren't any offices in Wisconsin that run, you know, sports pools. I want to get back to the second point about explicit prohibition, which is that, again, the criminal law in Wisconsin, Chapter 945.02 sub 1, makes making a bet a crime. So by definition, poker involves betting. But then Wisconsin allows many, many kinds of bets. Well, again, we need to look at the statute, IGRA. Section 2703 sub 7 says, does the law explicitly prohibit? But you admit that Wisconsin allows many sorts of bets. So you have the criminal law and then the exceptions to the criminal law. There are exceptions in the criminal law for the lottery, yes. I do acknowledge that, and it's right in Chapter 945. And parimutuel betting? Parimutuel betting is something that is allowed by the Constitution, correct. Right, so parimutuel betting is okay in Wisconsin. So Wisconsin does not have an across-the-board prohibition against betting. No, but the legislature, again, may not allow any gambling except for these exceptions. Poker is not one of those. Now, your argument, as I understand it, is we have to read the word prohibited in 2703 as relating specifically to the card game, to the poker, right? That's correct, Judge Williams. But I don't understand why we can't interpret the word prohibited in the same manner as cabazon. You know, it's a term of art that's used in cabazon. Why can't we do that? I mean, I don't think we're prohibited from doing that. You're not arguing that, are you? Well, the only way you can get to that is through the legislative history, and even when you look at the legislative history. Why is that? When any statute requires us to understand what is Congress talking about when it says prohibited, and there are two paths, you know, it's a fork in the road. You know, we can go down the regulatory fork, or we can go down the criminal, you know, unequivocal fork. I think you could only go down that fork if you conclude the statute is, and I'm saying IGRA is ambiguous. The state's position is it is not ambiguous, and this court's precedent and U.S. So why can't we say all prohibitions are regulatory then? You seem to think the default is that you get to ban it. And the default is it is banned in Wisconsin because bets are crimes. And you'll only get to looking at the legislative history, Judge Williams, if you would conclude that the statute, IGRA, Section 2703, Sub 7, is ambiguous. And if it is ambiguous, you have to show that you have to conclude that there are two competing interpretations that are reasonable. So is it your position that the governor of Wisconsin has the power to override criminal laws? No, it's not. Then why is it the case that the governor is authorized to enter into a compact that permits poker? So there are two things there. First of all, Chapter 14 allows the governor to enter compacts. I understand that. But you just said that the governor couldn't in a compact, I assume, stipulate that for purposes of gaming, private property can be taken without just compensation. That's correct. I mean, there's simply a prohibition for that. The governor can enter all the compacts he wants to, but that's not a power he has. I also assume that the governor can't say in a compact that if you violate the rules of the House, you can be shot. That's not in the governor's power. So if it's a criminal prohibition, why can the governor say, even though the Constitution of Wisconsin prohibits betting, I have the power to permit it? Well, first of all, there's another statute. First, you have Chapter 14 allows the governor to enter compacts. On top of that, you have IGRA, which says that if it's a Class 3 game, which this compact says that all forms of poker are Class 3 games, in that case, the federal law would permit the state to negotiate a compact with the tribe. So you're saying that the Constitution of Wisconsin, to this extent, is preempted by IGRA? Again, it's not the Constitution, because remember, the Constitution says the legislature may not authorize. It's the statutes, Chapter 945, which makes betting a crime. Okay, I mean, and so I don't see why, if you think because they put poker in the compact, that automatically defined poker as Class 3, and I think that's a little backwards reasoning. Non-banked poker either is Class 2, or it is Class 3, or it isn't. It doesn't really have anything to do with whether, I mean, I assume they could also put in the compact, you know, that people could play bingo in the casinos, and bingo is clearly Class 2. But maybe they put it in there just to make it clear. Right, and I think it's a little inaccurate to say that they were just talking about, you know, what Class 3 games are out there. The compact itself, and I understand your point, Chief Judge Wood, the compact cannot override IGRA. But it's inaccurate to say that the compact just said, when we're talking about where Class 3 gaming occurs, the compact says all forms of poker are Class 3 games. Why was the tribe negotiating with the state and the governor about where to have poker? I don't think that's quite what it says. Do you have the exact language of the compact in front of you? I do. I'll get you there. My recollection is that it says you can have poker, but I don't think it quite says. I can agree to our brief. We do quote in our brief, quote the language where it says all forms of poker are Class 3 games repeatedly in our brief. Where are you quoting from the compact? Sure. Okay, page 22 maybe. Well, what it says is authorized Class 3 gaming. These various states authorize the nation can offer for play these things, A, 6, all forms of poker, to the extent that these games are not included in the previous subsection. So that's not the same thing as saying all poker is Class 3. It's saying we are authorizing all forms of poker. So you could have put in that list bingo if you wanted to also, and it wouldn't make bingo either Class 2 or Class 3. It's just clarifying that you can have this. And, Chief Judge Wood, I want to point you on page 22 of our brief again. It says the tribe shall have the right to operate the following Class 3 games. I'm looking at page 22. All forms of poker. It is a Class 3 game under that term in the compact. Well, you are inferring that this is an indirect definition of even non-banked poker as Class 3. It doesn't actually say that. Well, it says all forms of poker, and that's our position is that it does indicate that poker is a Class 3 game. Again, why was the nation negotiating where a game like poker, a Class 3 game, would be played? We were talking about the nation, again, negotiating the compacts. I see my red light is on. Yeah, you can finish up your thoughts. The nation negotiated three places to have Class 3 gaming, and a fourth would have been the Madison location if it was approved by referendum. Right, which is really wild that the voters of Dane County have the power to change either state law or compacts or whatever. I thought that was very peculiar. It's a little bit more nuanced than that because the governor still has, in the compact itself, it says in that provision the governor still has to approve it even if the referendum passes. So the governor still has a role in that, and he would look at whether it's in the state's best interest at that point. Okay. Thank you. Thank you so much. Anything further, Mr. Piper? Just very briefly, Your Honor. Counsel said that sections 945.01 and .02 are the statutory prohibition against gaming in Wisconsin, and he did accurately state that there is a carve-out for the lottery. However, there is also a carve-out for bingo, but only if bingo is played by charities, religious organizations, or veterans groups. And yet bingo is allowed to be played in Class II facilities. That carve-out for bingo to be played by casinos was recognized even by the state as a permitting or at least not prohibiting so that Class II bingo could be played at my client's facility. It also has a carve-out that charities can offer raffles, which they are doing by issuing poker games. So the carve-outs he's talking about under the statutory prohibitions are exactly the carve-outs I am talking about as to why it has been permitted to be played at Class II facilities. The other thing that I wanted to mention was that counsel wants the court to essentially eviscerate the entire legislative scheme through the definitional section by reading the definitional section very narrowly. And in the Cole case of this court in 2004 and the Shackett case of the United States Supreme Court said that definitional sections should not be read so narrowly as to eviscerate the entire purpose of the legislation. And so the reality check here is that this whole analysis begins with Cabazon pre-IGRA. Cabazon is part of IGRA in 27015. And then you must look at what, as you have said, the prohibition, what does that mean given the legislative finding and given Cabazon and given the carve-out for the Cabazon kinds of games that are played. You go to the legislative history. The legislative history says that it is inaccurate that you bifurcate 2710 away from the rest of it. So if any person is allowed to do Class II gaming in Wisconsin for any purpose, which indisputably is happening here, then the exclusive authority to regulate gaming on Indian land is with both the tribe and with NIGC. And NIGC here has said repeatedly that you cannot look at only the definitional section alone. You have to read it with 2710 sub B. And when you read all of those together, that this type of gaming at this very facility is Class II. And we have never contended that that means the Chevron level of deference. It's a skid more. But they've been doing it for a long time, and we say that that just compounded on everything else shows that the e-poker at my client's facility on its sovereign property is Class II gaming. Thank you. Thank you very much. Thanks to both counsel. We'll take the case under advisement.